**IOWA AUTOMOBILE DEALERS ASSOCIATION, Appellant,**

v.

**IOWA STATE APPEAL BOARD, Appellee.**

No. 87–100.

Supreme Court of Iowa.

March 16, 1988.

Kasey W. Kincaid and James B. West of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth Osenbaugh, Deputy Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

An Iowa statute provides a registration fee credit for motor vehicles which are sold, traded, or junked. But a special provision in the statute denies the credit when the vehicle disposal occurs outside Iowa. On the basis of an Iowa attorney general's opinion that this provision was an unconstitutional discrimination against interstate commerce, the Iowa state appeal board began approving credits for vehicles sold, traded, or junked outside Iowa. Plaintiff, an association of Iowa automobile dealers, brought this action seeking judicial review of the board's action and for declaratory judgment. This appeal is from the district court's determination that the provision is unconstitutional. We affirm.

Iowa's motor vehicle registration system[1] is based, not on the calendar year, but upon a staggered, twelve-month period triggered by the registrant's birthdate.[2] Registrations are canceled upon the transfer of the vehicle and the new owner must re-register the vehicle if it is to be used in Iowa.

Upon the registration of a motor vehicle in Iowa the owner must pay a registration fee which will be prorated for the remaining unexpired months of the year. Iowa Code § 321.46 (1985). A credit for the person's previously registered motor vehicle is provided for the unexpired portion of the year. The registration fee credit will be afforded only if the person's prior motor vehicle was sold, traded, or junked within the state of Iowa. Iowa Code § 321.46(3). Whether the replacement vehicle was obtained in or out of Iowa is not relevant to the determination.

█ I. We think it is appropriate to comment on the status of the attorney general as counsel in this action. We have held that the attorney general lacks standing to bring an action to test the constitutionality of an Iowa statute. *State ex rel.*

---

1. The use of motor vehicle registration fees in Iowa is constitutionally committed to the road use fund. Iowa Const. art. VII, § 8 (1857, amended 1942).

2. This system is of rather recent vintage. 1982 Iowa Acts ch. 1062, § 8. Motor vehicles were formerly registered on a calendar year basis. Under the prior plan the vehicle's registration was transferred to the new owner and continued to the end of the calendar year.

*Fletcher v. Executive Council,* 207 Iowa 923, 925, 223 N.W. 737, 738 (1929). Other holdings limit the authority of the attorney general to the matters listed by statute. *Motor Club of Iowa v. Department of Transp.,* 251 N.W.2d 510, 513–16 (Iowa 1977); *State ex rel. Turner v. Iowa State Highway Comm'n,* 186 N.W.2d 141, 144–46 (Iowa 1971). On the basis of these holdings it is sometimes thought inappropriate for the attorney general to contend that an Iowa statute is unconstitutional. But this is not the import of the cited cases. Such a view would deprive departments of Iowa government of crucial legal advice. It would ill serve the public interest to require the attorney general to pretend otherwise after reaching the professional view that an Iowa statute is unconstitutional. What was criticized as inappropriate in the cited cases was the appearance of the attorney general as a litigant challenging an Iowa statute. There is nothing inappropriate when the attorney general defends a department of government which has acted in a good faith belief that a provision in an Iowa statute is unconstitutional.

■ II. Because fundamental constitutional rights are involved, our review is de novo. *Losee v. State,* 374 N.W.2d 402, 403 (Iowa 1985). State statutes carry a presumption of constitutionality. *Clements v. Fashing,* 457 U.S. 957, 962, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515 (1982); *Amana Soc'y v. Colony Inn, Inc.,* 315 N.W.2d 101, 111 (Iowa 1982). The party contending a statute is unconstitutional carries the burden of proving its unconstitutionality beyond a reasonable doubt. *Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

■ The commerce clause grants to congress the power "[t]o regulate commerce ... among the several states." U.S. Const. art. I, § 8, cl. 3. Although this clause speaks in terms of power bestowed upon congress, it also limits the power of the states to erect barriers against interstate trade. *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702, 711 (1980). The purpose of the commerce clause was to create an area of free trade among the states. *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 328, 97 S.Ct. 599, 606, 50 L.Ed.2d 514, 523 (1977).

■ Even though the clause is a limitation upon the power of the states, "in the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383, 398 (1977) (quoting *Southern Pac. Co. v. Arizona,* 325 U.S. 761, 766–67, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915, 1923 (1944)). Yet in regulating to protect local interests, the state generally must act in a manner consistent with the ultimate principle that one state in its dealings with another may not place itself in a position of economic isolation. *Lewis,* 447 U.S. at 36, 100 S.Ct. at 2015, 64 L.Ed.2d at 711.

■ State courts of general jurisdiction have the power to decide cases involving federal constitutional rights where neither the constitution nor statute prohibits it. *Boston Stock Exch.,* 429 U.S. at 320 n. 3, 97 S.Ct. at 602 n. 3, 50 L.Ed.2d at 519 n. 3. The United States Supreme Court has adopted a two-tiered approach to analyzing state economic regulation under the commerce clause:

> When a state statute *directly* regulates or discriminates against interstate commerce, or when its *effect* is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only *indirect effects* on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552, 559 (1986) (emphasis added). If the statute

regulates evenhandedly to effectuate a legitimate local public interest, the extent of the burden that will be tolerated depends on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. *Pike v. Bruce Church*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970).

 III. In concluding that section 321.46(3) directly discriminates against interstate commerce the district court said:

> It is beyond dispute that the statute creates an incentive for Iowans to trade cars with Iowa automobile dealers. All other factors being equal, it makes economic sense for an Iowa consumer to trade cars in Iowa rather than go out of state. The statute therefore protects instate car dealerships from competition across the border.

The association assails the holding on three bases. It first complains that the finding is unsupported by the evidence. The answer is that it need not be. In *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 406–07, 104 S.Ct. 1856, 1867, 80 L.Ed.2d 388, 403 (1984), the court stated that "[w]hen a tax, on its face, is designed to have discriminatory economic effects, the court 'need not know how unequal the tax is before concluding it unconstitutionally discriminates.'" *See also Armco Inc. v. Hardesty*, 467 U.S. 638, 644–45, 104 S.Ct. 2620, 2623–24, 81 L.Ed.2d 540, 546 (1984) (claimant is not required to prove actual discriminatory impact).

The association next argues that the statute mentions only the vehicle registration process in Iowa; it does not purport to regulate the purchase or sale of motor vehicles in or out of Iowa. But in a commerce clause challenge a statute is tested, not on the basis of its stated purpose or motive, but on the basis of its effect. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. at 352, 97 S.Ct. at 2446, 53 L.Ed.2d at 400; *Pike v. Bruce Church*, 397 U.S. at 145, 90 S.Ct. at 849, 25 L.Ed.2d at 179. In *Lewis v. BT Investment Managers, Inc.*, the supreme court said that "[t]he principal focus of inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects." 447 U.S. at 37, 100 S.Ct. at 2016, 64 L.Ed.2d at 712. If the statute directly discriminates against interstate commerce we need not consider the statute's purpose and whether it is legitimate or not. That inquiry is made only if there is no finding of direct discrimination.

Finally, the association contends the statute operates evenhandedly because its impact does not turn on whether the replacement vehicle was purchased within Iowa. But the contention overlooks the fact that the statute treats not only the replacement vehicle but also the vehicle being replaced. The statute directly affects where the sale of the vehicle being replaced will take place. That direct effect on interstate commerce is not made tolerable merely because the statute may operate evenhandedly with regard to where the replacement vehicle will be purchased.

The district court holding was correct. Section 321.46(3) directly discriminates against interstate commerce insofar as it denies a registration fee credit upon vehicles sold, traded, or junked outside Iowa.

AFFIRMED.